### HENRY CODMAN & another *vs.* WATSON FREEMAN.

A stipulation, in a mortgage of personal property, that property subsequently pur-chased by the mortgagor shall be subject to the same lien, and that the mortga-gor will execute a new mortgage thereof, is an executory agreement, which, until it is executed by a new mortgage, does not bind after acquired property; nor does it vitiate the mortgage as to property, to which it attached at the time of its execution.

Trespass against the officer is the proper remedy, where goods are wrongfully taken under color of legal process; and actual possession is not necessary, but a right of possession is sufficient, to maintain the action.

The title of a mortgagee of personal property cannot be defeated by an attaching creditor of the mortgagor, by showing that the property mortgaged was purchased by the mortgagor, with money which he had fraudulently reserved from his cred-itors, on the settlement of his estate, as an insolvent debtor.

Where personal property is mortgaged as a security against future and contingent liabilities, and not for the payment of money, it may be attached in the manner provided in the Rev. Sts. *c.* 90, §§ 78, 79, and in the act of 1844, *c.* 148, § 12; and, in such case, the mortgagee, instead of demanding payment of the money due him, and stating an account for the purpose, as provided in the statute, may pro-tect his interest under the mortgage, by giving the officer notice of its existence, with a schedule of the property embraced in it, and an intimation that he claims to hold the property pursuant to the mortgage.

Where personal property under mortgage was attached as the property of the mort-gagor, and the mortgagee made the demand and gave the notice required by law, and the attachment was subsequently dissolved by proceedings in insolvency against the mortgagor, but the officer proceeded, nevertheless, to seize and sell the property in pursuance of the attachment; it was held, that the mortgagee was entitled, in an action of trespass against the officer, to recover damages to the value of the property at the time of the taking, whether the same had been claimed by the assignee in insolvency or not.

When personal property under mortgage is attached as the property of the mort-gagor, if the mortgagee demand the same of the officer, without identifying and designating the specific articles, but only describing them by the schedule, and as the whole or a part of the goods attached by the officer in a particular house, this designation will be sufficient, provided the officer does not call upon the mortgagee to select and identify the articles more particularly, but persists in holding them as the property of the mortgagor.

THIS was an action of trespass *de bonis asportatis* against the defendant, as a deputy sheriff, for attaching and selling certain personal property described in the writ.

The plaintiffs, on the 12th of March, 1844, by a sealed instrument of that date, made a lease to Henry Dunham, of a public house in Boston, called the Earle Coffee-house, for the term of five years, at a yearly rent, payable quarterly, of $1100   At the same time, Dunham, the lessee, made a

Codman & another *v.* Freeman.

mortgage to the plaintiffs of the furniture in the house, the same being particularly specified in a schedule annexed to the mortgage deed, as security for the payment of the rent, and for the performance of the other covenants in the lease. The mortgage contained a stipulation, that if any of the property should be sold, and other furniture purchased in its place, the latter should stand as security for the rent, &c., in the same manner, and that the mortgagor should execute a new mortgage therefor. But there was no general power of revocation in the instrument.

On the 16th of May, 1844, suits were commenced by Philo S. Shelton and others against Dunham, as the principal defendant, and the plaintiffs, as his trustees, and the mortgaged property was also attached thereon, by the defendant, as a deputy sheriff, and held in the possession of a keeper under him until the 10th of February, 1845, when the same was levied upon, and, on the 19th of the same month, the proceeds applied·to satisfy an execution issued on a judgment recovered by Shelton in his suit against Dunham. The trustee proceedings were under the Rev. Sts. *c.* 90, §§ 78, 79, and the act of 1844, *c.* 148, § 2, and the plaintiffs were discharged therein, upon their answers.

On the 23d of May, 1844, and again on the 14th of February, 1845, the plaintiffs gave the defendant notice of the mortgage, and demanded a dissolution of the attachment, and a restitution of the property. The notice was accompanied with copies of the mortgage deed, and schedule, and of the lease, and notified the defendant that nothing was due on the mortgage, because the first quarter's rent had not then accrued. No tender was made by the officer or by the attaching creditors.

It was in evidence, that the plaintiffs instituted proceedings in the justices' court for the recovery of possession of the premises, on the ground of a non-payment of rent; and, having recovered judgment therein, were put in possession, in virtue of a writ of possession, on the 19th of February, 1845; that the leasehold interest of Dunham in the premises was

seized on the execution in favor of Shelton, and was levied upon and purchased by him; and that Dunham on the 13th of January, 1844, applied for the benefit of the insolvent law.

At the trial, which was before *Wilde,* J., the facts above stated being in evidence, on the part of the plaintiffs, they claimed to recover the full value of the property attached and sold; but the judge ruled, that the measure of the damages to which the plaintiffs were entitled, was the amount due according to the lease, at the time of their being restored to the possession of the premises, as above stated, with interest.

The defendant thereupon contended: 1. That the mortgage was fraudulent in law; 2. That the defendant was not liable in trespass; and, 3. That the demands made by the plaintiffs were insufficient. But these positions were overruled by the court.

The defendant then proceeded with his defence, and introduced much evidence, some of which related to the measures taken by the plaintiffs to obtain possession of the leased premises, and to the rents thereof subsequently received by them. But, by the view of the case which was taken by the court, this evidence became immaterial.

The defendant offered evidence to prove, that the money with which the mortgaged property was purchased by Dunham, was retained by him from his assets, in the proceedings in insolvency instituted on his application as above stated, and belonged to his assignee under the insolvent laws. This evidence was objected to by the plaintiffs, and excluded by the court.

A verdict was entered for the plaintiffs, by consent, with a sum in damages, which was to be enlarged or altered, according to the opinion of the court; who were authorized, if they should see fit, to refer the case to an assessor to estimate the damages upon such principles as the court should establish.

The case was argued at the last March term, by *N. D. Hubbard,* (with whom was *S. Bartlett,*) for the plaintiffs; and by *E. F. Hodges,* (with whom was *G. W. Cooley,*) for the defendant.

SHAW, C. J.   This is an action of trespass, to recover for goods alleged to belong to the plaintiffs, and taken by the defendant, in his capacity as a deputy sheriff, on a writ of attachment, as the property of Henry Dunham.   The plaintiffs claim as mortgagees under a mortgage made to them by Dunham, in March, 1844, conditioned to secure the payment of the rent reserved upon a lease then made by the plaintiffs to him for the term of five years, at a rent of $1100 a year. The estate leased was a hotel called the Earle Coffee-house, and the property mortgaged consisted of furniture therein, particularly specified in a schedule annexed to the mortgage deed.

1. It was contended, on the part of the defendant, that this mortgage was void in law, because it was not conditioned for the security of the payment of any present debt, but wholly for the security of rent to become due afterwards; and because there was a stipulation in the mortgage, that if any of the furniture should be sold, and other furniture purchased in its place, the latter should stand as security for the same duty, and that the mortgagor would execute a new mortgage therefor.   It was insisted that the mortgage was void by the statute of the 27th of Elizabeth.

Upon this point, the court are of opinion, that it does not appear on the face of the instrument, that it is fraudulent and void in law.   There was no general power of revocation reserved; and the power to sell and purchase other property in its place did not necessarily render the mortgage void. *Briggs* v. *Parkman*, 2 Met. 258.

The stipulatio⁻, that other property purchased by the mortgagor should be subject to the same lien, was an executory agreement which would not bind after-acquired property, until actually executed by a new mortgage given after its purchase.   *Jones* v. *Richardson*, 10 Met. 481.   But this stipulation did not vitiate and avoid the mortgage, in regard to the property to which the mortgage attached at the time of its execution, and no other property is claimed in this suit.

We think this inquiry was not precluded by the trustee process in the writ of Shelton against Dunham, on which the

goods were attached, and in which the present plaintiffs were summoned as trustees. No interrogatory was put to them on this subject; and it might be that the trustee process was commenced for another purpose. The record does not show that this subject was affected by it.

2. It was objected, that trespass would not lie. If the plaintiffs establish a title, and show that these goods were wrongfully taken by the defendant, under color of legal process, trespass is the proper remedy. *Boise* v. *Knox,* 10 Met. 40; *Thurston* v. *Blanchard,* 22 Pick. 18. An actual possession is not necessary; a right of possession is sufficient *Woodruff* v. *Halsey,* 8 Pick. 333.

3. The defendant challenged the plaintiffs' title to the furniture, as acquired under a mortgage from Dunham, on the ground, that it was purchased by money which Dunham had fraudulently reserved under proceedings in insolvency, and that the property might be claimed by the assignee; and proof was offered of these facts, which was rejected.

The court are of opinion, that this rejection was right. Even if the assignee could follow property thus purchased, into the hands of a mortgagee, taking it without notice of the fraud, which is doubtful, the attaching creditor, and the officer acting in his behalf, cannot thus impeach the plaintiffs' title, because they do not claim under the assignee, but, on the contrary, claim in effect adversely to the assignee, and attempt to hold the property for the attaching creditor's several debt. The defendant does not claim under that title, but under Dunham, whose fraud is thus set up to defeat a title which he has conferred on the plaintiffs.

4. It is then contended, that the plaintiffs did not make a sufficient demand and give sufficient notice to the officer, to enable them as mortgagees to maintain an action against the attaching officer. In *Johnson* v. *Sumner,* 1 Met. 172, a doubt was expressed upon the construction of the statute, (Rev. Sts. *c.* 90, §§ 78, 79,) whether personal property mortgaged to secure the performance of any duty or obligation, other than the payment of money, could be attached in any other mode than that of the trustee process, by which the

mortgagee might be summoned as trustee, conformably to the provisions of the statute. It is true, that several of the provisions of that statute are framed with a special adaptation to the case of a mortgage of personal property, to secure the payment of money; which would in fact embrace a large proportion of cases, and those most obviously presenting themselves to the consideration of the legislature. But in the case of *Haskell* v. *Gordon*, 3 Met. 268, the question came more directly before the court; and it was there held, that a mortgage for future and contingent liabilities would be good, and, as the words of the statute allow mortgaged property to be attached, property mortgaged to secure such future and contingent liability was liable to attachment in the manner directed by the statute, on compliance with the terms therein prescribed.

But it follows, as a necessary consequence, that the notice to be given, and the demand made, by the mortgagee, in such a case, must be adapted to a mortgage of this character, and to the actual rights and claims of the parties under it, at the time of the attachment. If, by the terms of the mortgage, no money is actually due to the mortgagee, no demand can be made on the officer or the attaching creditor, for the payment of money; and all that he can do is, to give the officer notice of the existence of the mortgage, with a schedule of the mortgaged property, and an intimation that he claims to hold the property pursuant to the mortgage. This, it appears by the case, was done on the 23d of May, 1844, by means of copies of the mortgage, schedule and lease; with notice that no money was due thereon, because the first quarter's rent was not yet due; and claiming a restitution of the property, and requiring a relinquishment of the attachment. We are of opinion, that such a demand and notice, giving the officer, and through him the attaching creditors, all the information which the mortgagees could give, was sufficient; and if the officer, after such notice, persisted in holding the goods, he did it at the peril, either of proving the mortgage invalid and void, or, as against the mortgagees, the plaintiffs, of being chargeable as a trespasser.

It was objected to the sufficiency of this notice and demand, that the plaintiffs did not identify and designate the specific articles demanded by them, but merely described them by the schedule, and as the whole or part of the goods attached by the defendant, in the Earle Coffee-house.

It does not certainly appear, but it is extremely probable, that there were other goods and furniture of the like kind in that house. But, if that fact were proved, we think it could not avail. If the officer, in answer to the plaintiff's demand, had professed his willingness to surrender the goods, and had called upon the plaintiffs to select and identify them more particularly, perhaps they would have been bound to do so. But the officer gave no such answer; on the contrary, he persisted in holding the whole of the goods, and denied the validity of the plaintiffs' title, and still denies it in this suit. Any more specific designation of the articles by the plaintiffs would have been useless, and of course unnecessary.

It appears to us, under this view of the plaintiffs' right of action, to be unnecessary to consider some other questions, which were argued very much at large, as to the measures taken by the lessors to get possession of the leased premises, and to the rents subsequently received by them. These all took place after the cause of action accrued, and are not of a nature to defeat it.

5. A question arose in regard to the rule for assessing damages, which, by agreement of parties, in case it should be decided that the plaintiffs are entitled to recover, are to be estimated by an assessor. This question is, whether the plaintiffs are entitled to recover for the value of the goods, at the time of the taking, or only for the arrears of rent, due to them at the time when they entered under the writ of possession, to determine the lease for the non-payment of rent.

In general, when a special owner of property recovers in trover or trespass, the damages are to be estimated at the value of the goods; because he either requires the whole amount to satisfy his own claims, or is responsible therefor to the general owner, or to some other person. But when it

appears that the goods have actually gone to the use of the party who was entitled to them, subject to the plaintiffs' claim; or when the plaintiff recovering is not responsible over to any other person; justice is done by giving the plaintiff damages to the extent of his own claim.

But, in considering this question, we may properly take notice of a fact, which perhaps does not distinctly appear, in the report of this case, but which appears prominently and forms the basis of the decision in the next case, that of *Shelton* v. *Codman.* We allude to the fact, that, after the attachment on mesne process, in the present case, and before the goods were taken on execution, in the suits of Shelton and others, attaching creditors, proceedings in insolvency were instituted, and a warrant was duly issued, and publication thereof made, by which the attachment on mesne process was dissolved. An argument, founded on this consideration, was put forth in the present case, as bearing upon some of the other questions, and I believe the document showing these proceedings was filed among the papers, but of this I am not confident.

On reference to the report, it does not appear to be distinctly stated as a part of the case. But, assuming that the same proof will be offered to the assessor, and the same fact established on the assessment of damages, we are of opinion, that the plaintiffs are entitled to recover damages to the value of the property at the time of the taking.

By the proceedings in insolvency, the attachments were wholly dissolved; the attaching creditors no longer had any lien upon the goods, or other interest in them; and, therefore, when the goods were taken on execution, those creditors were strangers, and had no right whatever to the property, or to the surplus, after the claim of the present plaintiffs was satisfied. On the contrary, subject to the plaintiffs' mortgage, the general property and the right to redeem vested in the assignee, and he alone became entitled to the surplus; and it makes no difference, in this suit, whether the assignee, under these proceedings, claimed the property or not; it was his duty to claim it; the lien created by the attachment was

dissolved, and the interest of the officer created by such attachment divested; and the attaching officer and creditors were strangers.

The case then stands thus: By force of the mortgage, the plaintiffs became owners of the property, as against the mortgagor, with a right of present possession, by a defeasible title, indeed, still by a title which made them owners until defeated. The sheriff takes them under claim of a right to attach them in behalf of creditors; but that attachment is dissolved, and then the plaintiffs have the same right against the officer, as they would have against any other stranger; and, upon recovering damages, they are entitled to the full value.

We are strongly inclined to think, that independently of this dissolution of the attachment by insolvency, the result would have been the same; because, from and after the plaintiffs' notice of their mortgage and demand on the officer, — neither the officer nor the attaching creditors having made any tender, — the holding was wrongful. and the plaintiffs became entitled to the full value, as a subst tute for the goods, which, by relation, were thus unlawfully taken from them. *Pomeroy* v. *Smith*, 17 Pick. 85.

But, as the fact of the dissolution of the attachment makes the case clear of difficulty, and that fact appears judicially in another case, we assume it to be equally true in this, and have preferred putting our decision on that ground.

*Referred to an assessor.*

The assessor having subsequently made his report, the acceptance of the same was objected to, for reasons which are sufficiently stated in the following opinion of the court thereon, which was delivered at the November term, 1849: —

SHAW, C. J.   The principal action was trespass against the defendant, as a deputy sheriff, for goods attached as the property of Henry Dunham, which had been previously mortgaged to the plaintiffs.

An opinion has been already given upon the questions discussed in the case, including the rule by which damages should be assessed ; and, by agreement of the parties, the case was committed to an auditor to assess the damages. He was directed to assess the damages, by estimating the value of the goods at the time of the taking, and computing interest thereon to the time of making up the report. This rule was adopted by the auditor, and he has returned his report made up on that basis.

It is now objected by the defendant to the acceptance of this report, that the rule of damages prescribed by the court was wrong ; and that damages ought to be assessed simply to the amount of the plaintiffs' debt secured by his mortgage ; on the ground, that as the defendant attached the goods for the benefit of the creditors of Dunham, the balance of value, over and above the plaintiffs' mortgage, has gone to the benefit of Dunham, the general owner ; and, therefore, that the mortgagees would not be liable over to any other person.

The court were strongly inclined to the opinion, that the latter rule did not apply, because the officer was a wrong-doer ; that his act, being unlawful, created no valid attachment ; that he could not set up the right of the attaching creditors, or claim to act upon their rights ; and, therefore, that the residue of the value of the goods, in the hands of the officer, did not lawfully belong to the creditors. For this rule, *Pomeroy* v. *Smith,* 17 Pick. 85, was cited. That case is directly in point. The reasoning is not very much expanded, but the legal ground is distinctly stated, namely, that the law has provided two modes, by which mortgaged and pledged property of a debtor may be reached by attachment, neither of which was followed in the present case : one by trustee process, the other by tendering to the mortgagee or pledgee the amount of his debt. But, if such tender be not made on reasonable notice, the officer becomes a trespasser *ab initio,* and his attachment is unlawful.

Were it otherwise, zealous and earnest creditors, wholly disregarding the rights of the mortgagee, might, through the

agency of legal process, and the act of an officer, seize and hold the property by force; set the mortgagee at defiance; subject him to protracted litigation; and, in the last stage, be allowed to take the entire benefit of such proceeding; deducting only the amount of the plaintiffs' debt, which must be deducted in any event, in the case supposed of a prior valid mortgage; and thus the attaching creditors would derive all the benefit from an illegal proceeding, which they are allowed to derive from a legal one.

The court were strongly impressed with the force of this reasoning, leading to the conclusion adopted in the case of *Pomeroy* v. *Smith*. But, in this stage of the cause, a fact appeared to the court, which put the matter beyond doubt. Pending in this court at the same time with this case, was the case of *Shelton* v. *Codman*, one of the parties being the same, and the cause involving many points in common with the case at bar. So intimately were these causes connected, that after one was argued, the judgment was postponed until the other was heard. In that case, it appeared, that after the attachment made by the defendants therein, and before the goods were taken in execution, proceedings in insolvency were commenced a second time against Dunham, a meeting of creditors held, an assignee chosen, and an assignment made. By force of the statute, this proceeding dissolved the attachment, under which the defendant, as deputy sheriff, claimed to hold the goods, and put an end to any right to them, which he could set up. It put an end, also, to the question as to the rule of damages, arising from the fact of the defendant's holding for the benefit of the creditors, and left the case clear of doubt. We, therefore, stated this fact, as one having an influence upon the opinion, which we gave on the former occasion.

We referred to those proceedings, for the reason, that where there is one ground of decision which is plain and clear, and another which is less so, or less applicable, it is most satisfactory to rest a decision on the former. The objection is now made, that the fact in question does not distinctly appear in

the report and proceedings in this case; and that the court cannot in this case, and for the purpose of an influence upon it, legally take notice of a fact appearing in another. This ground is extremely narrow and technical. The fact in question appeared prominently, and was the basis of adjudication, in the case of *Shelton* v. *Codman.* It was the very ground, on which the plaintiff failed to establish his title to a term under the sheriff's sale, because the attachment on mesne process was dissolved by the intervention of the insolvency of the debtor. The two cases depended, to a considerable extent, on the same facts, and were discussed by the same counsel; still, it is true, they were not between the same parties. But, supposing a court is bound to close its eyes against every thing, which does not appear in the case as stated in the report, or in the exceptions, or otherwise in the record, a technical answer is good to a technical objection. Upon the question of damages, the case was not so closed as to shut out competent and pertinent evidence. The case was by previous agreement of the parties to be sent to an auditor, to assess damages upon such rules as the court should prescribe. We, therefore, intimated, that having been considering these insolvent proceedings in another case, and assuming that they could be proved again, if true, we assumed the truth of them, in the present case, to guide and confirm our judgment. If the proceedings had been superseded, or if their existence or validity could be questioned, it was perfectly competent for the defendant to have shown that to the court, before the order to the auditor was made out. So it was competent, after the order was made out, on showing any mistake or misapprehension, to move for its amendment. But, clearly, it was not competent for the assessor, upon the motion of the defendant, to depart from the rule of assessment furnished by the order.

*Judgment for the plaintiffs, for the amount reported by the auditor.*